TEXAS & PACIFIC RAILWAY COMPANY v. G. W. STOREY.

Decided November 12, 1904.

**1.—Carrier of Passengers—Negligence—Willful Act of Fellow Passenger.**

Where a passenger receives an injury through the willful act of a fellow passenger, the carrier is liable only when, by the exercise of the requisite high degree of care, such act, in view of all the circumstances, might have been reasonably anticipated or foreseen and prevented.

**2.—Same—Unforeseen Act of Drunken Passenger.**

Plaintiff's wife was injured by reason of a collision brought about by the act of a drunken passenger in purposely uncoupling the car in which she was riding from the other ·part of the train. The passenger had been on the train but a short time, was not boisterous, and prior to the uncoupling had done nothing that indicated his drunken condition. The conductor had not reached him in taking up ·tickets, and no employe of the company had observed him, the brakeman being in another car looking after the fires. Held, that a recovery against the railway company was not authorized by the facts.

Appeal from the District Court of Lamar. Tried below before Hon. T. D. Montrose.

*T. J. Freeman* and *Head & Dillard,* for appellant.—1. The undisputed evidence did show that the cars were uncoupled, and the collision which caused Mrs. Storey's injuries was caused, by the wilful act of a third person, who was a fellow-passenger of plaintiff, and there was no sufficient evidence to render defendant liable to plaintiff therefor. Railway v. Storey (this case on former appeal), 68 S. W. Rep., 534; Prokop v. Railway, 34 Texas Civ. App., 520; Railway v. Long, 36 S. W. Rep., 485; Dumas v. Railway, 43 S. W. Rep., 908; Railway v. Phillips, 69 S. W. Rep., 994.

2. Where the evidence is undisputed, as in this case. Railway v. Bingham, 90 Texas, 223; Seale v. Railway, 65 Texas, 274; Railway v. Neely, 60 S. W. Rep., 282; Railway v. Neely, 72 S. W. Rep., 159; 8 A. & E. Ency. L. (2d ed.), 580.

*Dudley & Sturgeon,* for appellee.—1. The duty of railroads carrying passengers requires such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them as would be used by a very cautious, prudent and competent person under similar circumstances. Dallas Ry. Co. v. Randolph, 8 Texas Civ. App., 213; Gallagher v. Bowie, 66 Texas, 266; Railway v. Halloren, 53 Texas, 53; Railway v. Welch, 86 Texas, 203; H. & T. C. Ry. Co. v. George, 60 S. W. Rep., 213; Ft. Worth & D. C. Ry. Co. v. Rogers, 60 S. W. Rep., 61. And this rule applies to all the means and measures of safety which the passenger of necessity must entrust to the carrier (Texas & P. Ry. Co. v. Miller, 79 Texas, 78), as well as protection from the wrongful and negligent acts of other passengers in reference to and affecting such means of safety so entrusted to the carrier as could have been anticipated as possible to occur in view of all the circumstances, and of the number and character of the persons on board the train. Railway Co. v. Pillow, 76 Pa. State, 510; West Memphis Packet Co. v. White, 41 S. W. Rep., 583 (directly in point); Flint v. Transportation Co., 6

Blatchf. 158; Fed. Case No. 4873, Id. 34 Conn., 554, 13 Wall. 3; Goddard v. Railway Co., 57 Me., 202; Stewart v. Railway Co., 90 N. Y., 588; Railway Co. v. Burk, 53 Miss., 200; Pittsburg v. Hinds, 53 Pa. St., 512; Carpenter v. Railroad Co., 97 N. Y., 494; Galloway v. Railroad Co. (Minn.), 57 N. W. Rep., 1058; Simmons v. Steamboat Co., 97 Mass., 361; 2 Wood's Railway Law, 1178; Thomp. on Car., p. 303, sec. 4.

2. To constitute an act of negligence, the proximate cause, it need not be the sole cause. If it be a concurring cause, such as might reasonably have been contemplated as involving the result under the attending circumstances, it will be held a proximate cause of the injury. Gonzales v. City of Galveston, 84 Texas, 3; Jones v. Gage, 61 Texas, 353; Eames v. Railway Co., 63 Texas, 664; Seale v. Railway Co., 65 Texas, 277; Texas & P. Ry. Co. v. Bingham, 90 Texas, 223; Waters-Pierce Oil Co. v. Doris, 60 S. W. Rep., 453; San Antonio Gas Co. v. Spegle, 60 S. W. Rep., 884; Smith v. Railway Co., 58 S. W. Rep., 151. And the proximate cause of an injury is a question for the jury. Johnson v. Railway Co., 2 Texas Civ. App., 142, 21 S. W. Rep., 274, and the authorities cited above.

TALBOT, Associate Justice.—G. W. Storey brought this suit to recover damages for personal injuries sustained by his wife, Sarah A. Storey, in an accident which occurred while she was a passenger on one of the appellant's passenger trains. A jury trial January 7, 1904, resulted in a verdict and judgment against appellant for the sum of $160, and the case is before us on appeal.

On December 20, 1900, Mrs. Storey was a passenger on an excursion train en route from Enloe, Texas, to Huntsville, Ala. The car in which she was riding was carried from Enloe to Paris, Texas, by the Texas Midland Railway, and there attached to a train of the Texas & Pacific Railway Company, said car being the rear coach of said train. This train left Paris, and when about nine miles distant therefrom, and while being run at the rate of twenty-five or thirty miles per hour, a drunken passenger by the name of Oliver recklessly and in total disregard of the lives of the fellow passengers, uncoupled the car in which Mrs. Storey was riding from the other portion of the train. The train consisted of the engine and twelve coaches, and the separation of the car in which Mrs. Storey was seated from the rest of the train caused the air brakes to set automatically on the car detached and also on the main part of the train. The part of the train that remained connected to the engine, however, stopped sooner than did the coach which had been cut loose, and said coach ran against the cars ahead of it. The shock of the collision threw Mrs. Storey against a seat and injured her.

It is sought to hold appellant liable on the ground that it was guilty of negligence in not anticipating and preventing the willful and unlawful act of the passenger which occasioned Mrs. Storey's injuries; that the air brake on the coach in which she was riding was defective, otherwise it would have been stopped by automatic action thereof before it collided with the main part of the train; that the hand brake on said coach was defective and there was no brakeman on said coach.

The case was submitted to the jury on a general charge and several

special charges, and in no event were they authorized to return a verdict in favor of the plaintiff unless they believed from the evidence that appellant ought to have anticipated and foreseen that some such person as the drunken passenger, by the same wrongful act, would bring about the accident which resulted in the injuries to appellee's wife.

No complaint is urged to the form or construction of the court's charge, but at the conclusion of the evidence appellant requested the court to instruct the jury as follows: "The evidence in this case is not sufficient to authorize you to find that the defendant was guilty of negligence in not anticipating and preventing the cars from being uncoupled by the person who uncoupled them."

This charge was in effect an instruction to return a verdict for appellant because the evidence was insufficient to warrant or support a finding in favor of appellee, and is the basis of appellant's ninth assignment of error. Appellant, by its fifth assignment, also complains that the evidence was insufficient to justify a verdict for appellee, and these assignments present the controlling question, we think, and the only one for our determination. In the opinion of this court on the former appeal of this case, it was said: "The company was not negligent in having the air brake in such condition, unless it should have foreseen that a necessity might arise for having the same in more perfect condition. Such necessity could only be created by the unauthorized act of a stranger, and if there was no reason to apprehend such an act, negligence could not be predicated on the condition of the air brake." 29 Texas Civ. App., 483, 68 S. W. Rep., 534.

It is well understood that a common carrier of passengers, in the performance of its duties respecting the safety of the passenger, is required to use a very high degree of care and watchfulness. As applied to railway companies in this State it has been held that such "companies are bound to exercise, for the safe transportation of their passengers, that high degree of care and prudence that very cautious and prudent persons would exercise under the circumstances of the situation. Incident to this duty their agents are authorized to use all necessary power and means to eject from their carriages or means of conveyance anyone whose conduct is such as to endanger the safety or interfere with the reasonable comfort or convenience of the other passengers. . . . If this duty is neglected, without good cause, and a passenger receives injury which might have been reasonably anticipated or naturally expected from one who is improperly received or permitted to continue as a passenger, the carrier is responsible."

The carrier, however, is not an insurer of the safety of the passenger and liable at all hazards. If a passenger receives an injury through the willful act of his fellow passenger, the carrier is liable only when, by the exercise of the degree of care stated, such act, in view of all the circumstances, might have been reasonably anticipated or foreseen and prevented. Galveston H. & S. A. Ry. Co. v. Long, 13 Texas Civ. App., 664; Putnam v. Railway Co., 55 N. Y., 108; Pittsburg F. W. & C. R. Co. v. Hinds, 53 Pa. St. R., 512; International & G. N. R. Co. v. Williams, 20 Texas Civ. App., 587, 50 S. W. Rep., 732.

The uncontroverted evidence shows that at the time the passenger,

Oliver, uncoupled the cars, which resulted in Mrs. Storey's injuries, no employe of appellant was in the car in which she was seated, or had any knowledge whatever that Oliver contemplated or was likely to do an act so inconceivable and dangerous to the lives of his fellow passengers. The conductor at the time was engaged in collecting fares or tickets from passengers in another car, and the brakeman under his direction was making or looking after fires in the front part of the train. The train, since leaving Paris, the place where Oliver evidently boarded it, had not traveled the distance of more than nine miles and the time required to make the run was about twenty minutes. The conductor began the collection of tickets in the front end of the train and was proceeding, in the performance of his duty, towards the rear car in which Mrs. Storey was riding, and had only reached the fifth car, in advance of the one she was in, when the separation of the train occurred. He had been engaged in taking up tickets from the time the train left Paris until the collision between the detached car and the other part of the train happened. Before this occurred he had not seen any drunken man about the rear car, and no one had informed him that such a man was on that car. Nor was it shown that any other person on the train was intoxicated. Oliver had not been boisterous or rude to the other passengers, and in no way, so far as the testimony shows, demeaned himself in such manner as to incur their displeasure or threaten interference with their comfort, or injury to their persons, until almost at the very instant the cars were uncoupled, unless it can be said his bare presence in an intoxicated condition endangered their safety. That this does not necessarily follow to such an extent as to place a person of ordinary care and prudence, occupying the position of conductor of a train, on notice that interference with or danger to other passengers was reasonably to be apprehended, and the expulsion of the intoxicated passenger authorized, is affirmed, as we understand them, by the cases of Putnam v. Railway Co. and Railway Co. v. Long, supra.

In the first case cited it is said, in effect, that so long as the intoxicated passenger remains quiet and does not, by offensive language or threatening conduct, molest the other passengers, there is nothing to indicate to the conductor that his presence is a menace to the passengers or that harm to anyone may be expected from him. In each of those cases the conductor had seen, talked with and knew the condition of the offending passenger. In the case before us it does not appear that the conductor or any other employe of the railway company saw Oliver at Paris before the train started, or knew that he was on the train until after the accident. Sufficient time had not elapsed from the starting of the train to the time of the collision for the conductor, in the exercise of the diligence required of him in the proper discharge of his duties, to have reached the rear car where the wrongful act was done which resulted in Mrs. Storey's injury, and to have prevented it. Nor does it appear that appellant is chargeable with negligence on account of the failure of any other servant to discover the presence of Oliver and prevent the collision. Or, if it be conceded that appellant's employes in charge of the train in question failed to exercise that degree of care and diligence required of them, to ascertain the presence of Oliver on the train and his intoxi-

cated condition, and that the case should be treated as though they actually knew of such presence and condition, yet there is no evidence, in the sense that a mere scintilla is no evidence, to authorize the conclusion that if appellant had exercised the utmost vigilance and foresight in guarding its passengers against violence, the act committed by Oliver might have been by it reasonably anticipated and prevented. With practically but an instant's warning, he pulled the lever and uncoupled the cars. It is true one witness says she saw "the man working at the lever for about ten minutes," but we regard this as unimportant. His purpose was not indicated or made manifest until the expression was used, "I'll cut the damn thing loose." Immediately upon the uttering of these words, according to the uncontroverted evidence, he raised the lever and the cars separated. So wanton was this act, and such a reckless disregard of human life involved in it, that surely no one could have foreseen or anticipated it. That dire consequences to the passengers might be expected to result from such an act is most natural and reasonable; but there was nothing in the conduct of Oliver, until too late for any one of appellant's employes, had he been in the car, to have prevented it, to suggest to the most vigilant, careful and discerning servant that an act so fraught with probable danger to the actor's own life and to the lives of his fellow passengers, would be committed. Oliver was not so drunk that he was incapable of contemplating the nature and probable consequences of his act, and was not so drunk that by reason thereof alone he was dangerous to the other passengers. The appellant, under the circumstances, could not have foreseen that some such person as Oliver would have acted as he did and brought about the accident.

In the case of the International & G. N. Ry. Co. v. Williams, supra, which has been cited by appellee, the court says: "Appellant is not held responsible for the negligence of the other passenger, which it had no opportunity to anticipate and prevent;" but it affirmed the case on the ground that the railway company was guilty of negligence in overcrowding its cars, which obliged the injured passenger to ride on the platform from which he was pushed off by other passengers engaged either in a playful scuffle or an altercation. It was held that the casualty in that case was the proximate result of the company's negligence and one that it might reasonably have foreseen, though it could not have foreseen the particular circumstance. The facts in that case are dissimilar to the facts in the case which we have in hand, and the holding there is not in conflict with the ruling here made.

The evidence is insufficient to authorize a recovery against appellant, and a verdict should have been instructed in its favor. It appears that the case has been fully developed, and hence there is no probability of its being strengthened for appellee on another trial. For the reasons indicated, the judgment of the court below is reversed and judgment here rendered for appellant.

*Reversed and rendered.*

### ADDITIONAL CONCLUSIONS OF FACT.

Appellee has filed a motion for additional conclusions of fact and in addition to those stated in the opinion we filed the following:

1. An ordinary passenger train on appellant's line of railroad on which the accident occurred was usually composed of four passenger coaches and one baggage car; whenever a chair car is among the coaches of such train it is manned by four trainmen, namely, a conductor, baggageman, brakeman and chair car porter. In the absence of a chair car there is no porter. The train on which appellee's wife was injured consisted of one baggage car and eleven passenger coaches, but no chair car. All the passenger coaches were full of passengers, and the trainmen were a conductor, brakeman and baggageman.

2. The car in which Mrs. Storey was riding was a Southern car, and was the rear coach of the train, and at the time of the accident there was no trainman in that coach. This car was provided with what is called a "Janie" automatic coupler, which is uncoupled by means of a lever. The lever is not fastened or locked, and the car could be uncoupled and detached from the other part of the train by raising the lever and turning it around. This car was not fastened to the other coach with stay-chains, but solely by the coupler. There were chains on all the Texas & Pacific coaches, and all the Texas & Pacific coaches that have this same kind of couplers have on either side of it two chains that fasten the coaches together. That is usual for passenger coaches. The coach in which Mrs. Storey was riding did not have any. These chains are called stay-chains.

3. If the airbrakes are in proper working order on a train of the character in question, and the rear car is detached, the brakes are set automatically by the air on the main part of the train and also on the detached car. They were so set by reason of the parting of the train on this occasion.

That part of the train which has most brakage power, and to which the engine is attached, in such case, should stop sooner than the other, and it so occurred in this instance. How far either will run after the brakes are so applied is so dependent upon the grade of the track, the speed of the train, etc., that it can not be definitely told. The testimony varies as to the distance the car in which Mrs. Storey was riding ran in this instance after being detached, but we conclude it was not over 200 feet before coming in collision with the other portion of the train which had stopped.

4. In addition to the airbrakes there was a handbrake attachment on the car detached. After it was uncoupled a passenger turned the handbrake, but it seemed to have no effect, and the car ran on striking the train, which had stopped. When the train left Paris all the brakes were in good working order and would set the brakes when the air was applied. If the air goes out from the train line, whether caused by the breaking of the train in two or the bursting of the pipes, it will set all the brakes, and if the brakes set, the use of the handbrake will have no effect whatever.

5. The conductor saw several parties standing on the platform of some of the cars in the front part of the train, and it was against the rules of the company for them to do so. He did not see them working or doing anything about the brakes. He did not see anyone on or about

the platforms between the car in which Mrs. Storey was riding and the one to which it was attached.

6. We further find that it incontrovertibly appeared that the equipment of the train was sufficient for its safe operation; that the coupling appliances provided were sufficient to safely and securely hold the train together, and but for the intervening act of the drunken passenger in uncoupling the cars the accident would not have occurred.

7. The proximate cause, as shown by the undisputed evidence, of Mrs. Storey's injuries was the wanton act of the drunken passenger in uncoupling the car, and not the failure to have the car fastened to the other car by stay-chains, or because of any defect in the brakes.

Writ of error refused.